UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY HARKER,<br><br>          Plaintiff,<br><br>     v.<br><br>STACY ZIGLER, et al.,<br><br>          Defendants. | No.  13-cv-1305 TLN CKD<br><br>**ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

This case is before the Court pursuant to Defendants Lori Rodriguez, Stacy Zigler, Greg Anderson, and Tim Virga/Rhonda Carter's (hereinafter collectively referred to as "Defendants") motions for summary judgment. (ECF Nos. 66, 67, 68, and 69.) Plaintiff Bobby Harker ("Plaintiff") has failed to oppose any of the motions for summary judgment. In fact, this Court issued an order to show cause ("OSC") on September 11, 2015, and Plaintiff has failed to respond to that Order as well. (*See* OSC, ECF No. 72.) Thus, the Court was required to make its decision solely on the briefing submitted by Defendants. For the reasons stated below, Defendants Lori Rodriguez, Stacy Zigler, Greg Anderson, and Tim Virga/Rhonda Carter's motions for summary judgment (ECF Nos. 66, 67, 68, and 69) are hereby GRANTED.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a prison inmate currently incarcerated at California State Prison, Los Angeles County ("CSP-LAC"), located in Lancaster, California.  Plaintiff filed a civil rights action on

1

1   February 19, 2013, pursuant to 42 U.S.C. § 1983, alleging that Defendant Stacy Zigler ("Zigler")
2   sexually abused and assaulted Plaintiff while he was incarcerated at California State Prison,
3   Sacramento ("SAC"), located in Represa, California.  (Compl., ECF No. 1.)  The Complaint
4   further alleges that Supervising Defendants violated Plaintiff's rights through their deliberate
5   indifference toward Defendant Zigler's sexual misconduct.

6        Plaintiff Bobby Harker, a prisoner of the State of California, is currently serving a 17 year
7   sentence for burglary.  (Def Zigler's Statement of Undisputed Facts ("SSUF"), ECF No. 67-1 #1.)
8   Plaintiff was housed at California State Prison-Sacramento (CSP-SAC) in Represa, California
9   from June 24, 2010 to July 31, 2012.  (SSUF #2.)  Prior to being housed at CSP-SAC, Plaintiff
10  was housed next door, at Folsom State Prison ("Folsom").  (SSUF #2.)  Defendant Zigler worked
11  as the Standards Compliance Coordinator for the Correctional Treatment Center ("CTC") at CSP-
12  SAC from September 2010 until August 2011.  (SSUF #3.)  In this role, Defendant Zigler was
13  responsible for achieving and maintaining the licensing, certification, and accreditation of the
14  CTC; assuring compliance with other applicable standards of quality of care; integrating these
15  activities with other facility-wide quality assurance activities; and other related work.  (SSUF #3.)
16  Plaintiff was hired as a porter for the CTC, and primarily supervised by Maintenance Mechanic
17  Greg Anderson.  (SSUF #4.)  Plaintiff worked as a porter for seven months, beginning in
18  December 2010. As a porter, Plaintiff's responsibilities included maintaining the CTC unit,
19  cleaning cells, mopping, sweeping, and removal of waste disposal.  (SSUF #5.)

20       Plaintiff and Defendant Zigler met around December 2010 or January 2011 while he was
21  working as a porter in the CTC.  (SSUF #7.)  While working in the CTC, Plaintiff told Defendant
22  Zigler stories about his family and childhood.  (SSUF #8.)  For example, Plaintiff told Defendant
23  Zigler he was homeless for parts of his life, his mother was involved in a residential burglary and
24  was a prostitute, his father was one of his mother's "johns", and that his stepfather did drugs and
25  was abusive.  Plaintiff said his mother and sister had visited him only once.  (SSUF #8.)

26       Plaintiff and Defendant Zigler had their first romantic encounter in February 2011, but it
27  is unclear as to what the level of physical intimacy between the two parties was.  Plaintiff asserts
28  that they had numerous sexual relations (Harker Dep. at 49:10–52:17), whereas Defendant Zigler

asserts that she never had sexual relations with Plaintiff (Zigler Decl., ECF No. 67-2, Ex. C at ¶ 11). The "relationship" lasted approximately six months, from February 2011 until mid-July 2011. (Harker Dep. at 53:10–12.) On June 9, 2011, an inmate approached Defendant Greg Anderson and reported that he had concerns about several interactions between Plaintiff and Defendant Zigler. On that same day Defendant Anderson informed Supervisor M. Harmon of what the inmate had reported to him. (Anderson Decl., ECF No. 68-6 at ¶12.) On Friday June 10, 2011, Defendant Anderson along with M. Harmon spoke with Defendant Lori Rodriguez, the Correctional Health Services Administrator at CSP-Sacramento, about what the inmate had reported, as well as Defendant Anderson's own observations of interactions between Plaintiff and Defendant Zigler. (Anderson Decl., ECF No. 68-6 at ¶ 13.) Defendant Anderson was instructed to write a memorandum documenting what he and Defendant Rodriguez had spoken about. (Anderson Decl., ECF No. 68-6 at ¶ 13.) Defendant Anderson completed the memo on June 12, 2011, and delivered it to Defendant Rodriguez. (Anderson Decl., ECF No. 68-6 at ¶ 14.)

In August 2011, Defendant Zigler was placed on administrative leave and was not to return to the institution while an investigation was conducted. (Rodriguez Decl., ECF No. 66-5 at ¶ 7.)

## II.     LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party

who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

### III. ANALYSIS

Plaintiff asserts two causes of action in his Complaint.  (Compl., ECF No. 1.)  Count I alleges a 42 U.S.C. § 1983 claim for Eighth Amendment violations by Defendant Zigler, specifically, that Defendant "Zigler violated Plaintiff's right to be free from sexual assault while imprisoned."  (ECF No. 1 at ¶ 27.)  Plaintiff's Second Cause of Action asserts a 42 U.S.C. § 1983 claim for Eighth Amendment violations against Defendants Greg Anderson, Lori Rodriguez, Tim Virga, and Ronda Carter.  (ECF No. 1 at ¶ 35.)  Plaintiff's theory of liability against these Defendants is that they were Zigler's supervisors and "knew or should have known of the Sexual Misconduct perpetuated on Plaintiff by Zigler because they directly and indirectly received reports of the Sexual Misconduct and/or participated in the investigation of the Sexual Misconduct, but failed to halt, prevent, or abate the Sexual Misconduct."  (ECF No. 1 at ¶ 37.)  Thus the entirety of Plaintiff's complaint is predicated on Plaintiff's allegations that Defendant Zigler sexually assaulted Plaintiff.

Although there are material issues of fact as to whether or not Plaintiff and Defendant Zigler in fact had a physical relationship, both parties agree that there was a relationship.  For the reasons set forth below, the Court finds that the relationship was consensual and thus did not violate Plaintiff's constitutional rights.

The Eighth Amendment prohibits cruel and unusual punishment in penal institutions. "Whether a specific act constitutes cruel and unusual punishment is measured by 'the evolving standards of decency that mark the progress of a maturing society.'"  *Wood v. Beauclair*, 692 F.3d 1041, 1045–46 (9th Cir. 2012) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment. *See Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ("In the simplest and most absolute of terms ... prisoners [have a clearly established Eighth Amendment right] to be free

from sexual abuse...."); *see also Women Prisoners of the Dist. of Columbia Dep't of Corr. v. District of Columbia*, 877 F. Supp. 634, 665 (D.D.C. 1994) ( "[U]nsolicited touching of ... prisoners' [genitalia] by prison employees are simply not part of the penalty that criminal offenders pay for their offenses against society" (internal quotations omitted).

Because of the power dichotomy between inmates and correctional officers, the Ninth Circuit has adopted a rule that "explicitly recognizes the coercive nature of sexual relations in the prison environment." *Wood*, 692 F.3d at 1049. Thus, when a prisoner alleges sexual abuse by a prison guard, the prisoner is entitled to a presumption that the conduct was not consensual. *Id.* The state then has the opportunity to rebut this presumption by showing that the conduct involved no coercive factors. *Id.* "[E]xplicit assertions or manifestations of non-consent indicate coercion, but so too may favors, privileges, or any type of exchange for sex. Unless the state carries its burden, the prisoner is deemed to have established the fact of non-consent." *Id.*

Here, Plaintiff has alleged sexual abuse, so he is entitled to a presumption that the conduct was not consensual. *Wood*, 692 F.3d at 1049. However, Defendants have presented evidence that the relationship was in fact consensual and Plaintiff has failed to even oppose Defendants' motions for summary judgment. Plaintiff testified in his deposition that he had a relationship with Defendant Zigler: "Well, we had somewhat of a relationship, or something like that, or at least that's what – I'm not really sure to this day really what was going on, but you know, in my mind, that's where my head was at." (Harker Dep. At 34:9–12.) Plaintiff further testified that Defendant Zigler never used physical force against him, (Harker Dep. at 60:13–14), and that he consented to having sex with Defendant Zigler (Harker Dep. at 87:1–4 ("There was sex that was – that I guess you could describe as consensual on my part, as far as me agreeing to this")). In fact, it seems that Plaintiff's allegations that the contact and relationship were not consensual, thus his request for $490,000 in punitive damages, are based on his understanding that there cannot be consensual relationships between a correctional officer and an inmate:

> I mean, first of all, it's against every known moral law in California for an officer to have sexual relationships with somebody in custody. There's case law and public law. It's a crime. It's a crime involving moral, you know, and not to mention the number of times it was committed, the circumstances it was committed, the

1 action of the other staff to allow it to happen.

(Harker Dep. at 65:18–25.)  Although Plaintiff is owed a presumption, that presumption is further undermined by Plaintiff's admitted consent throughout the relationship between himself and Defendant Zigler.

From April to July of 2011, Plaintiff used a cell phone to communicate with Defendant Zigler.  (Harker Dep. at 29:3–7, 31:11–24, 32:13–17.)  Plaintiff testified that he would call Defendant Zigler approximately twenty (20) times a day (Harker Dep. at 32:3–5), and that he would tell her that he loved her at least once or twice per day.  (Harker Dep. at 40:3–9.)  Plaintiff testified that he and Defendant Zigler spent time talking about their families and other normal relationship things.  (Harker Dep. at 33:22–25.)  Plaintiff also testified that he used the cell phone to send Defendant Zigler approximately twenty (20) sexually explicit pictures of himself. (Harker Dep. at 41:19–21, 42:8–15.)

Plaintiff also utilized the prison's collect call phone system to call Defendant Zigler. [1] (Harker Dep. at 39:15.)  Plaintiff was aware that these phone calls were recorded, and that in order for Plaintiff to conceal he was speaking with Defendant Zigler, he would not use her name during telephone calls he placed to her.  (Harker Dep. at 39:18–40:2.)  For example, during a 2011 call from Plaintiff to Defendant Zigler, Plaintiff began the phone call by saying "Hey little mama, it's big daddy."  (Call Log "3C1G10H9," Def. Zigler's Ex. H.)  During the numerous taped phone calls, Plaintiff made numerous statements to Defendant Zigler that evidence his acquiescence in the relationship, such as "We gotta get you approved.  I miss you, I haven't seen you in a while. . . I miss you, I'm going to write you a letter. . . I'll be thinking about you, alright."  (Call Log "3B1G10GW," Def. Zigler's Ex. H.)  Plaintiff also makes comments alluding to his sexual desire for her:  "It's constantly up.  It's like always half way up.  That's how bad it is."  (Call Log "3B1G10GW," Def. Zigler's Ex. H.)  As the Court considered the taped phone calls between Plaintiff and Defendant Ziggler, it became clear that not only did Plaintiff consent

---

[1] The Court was provided with 59 recorded calls that were placed by Plaintiff.  The majority of the calls were made to Defendant Zigler.  The Court does not have the dates and times for each phone call.  However, it is clear from the content of the calls that they span the time frame that Plaintiff and Defendant Zigler were involved in some sort of relationship.

7

to the relationship, he pursued Defendant Zigler.  As an example, the Court has provided a small sample of Plaintiff's statements to Defendant Zigler from the taped phone calls that he placed while at Folsom Prison:

> "I've been thinking about you.  Are you still sleeping with my picture?  I wish I had a picture of you to sleep with."
>
> (Call Log "3C1G10H4," Def. Zigler's Ex. H.)
>
> "I miss you a lot… I wish you would hurry up and come visit me. . . I'm not going to bite you unless that's what you like, that's what you're into. . . I've told you before, I'm down for whatever. . . wish I had a picture of you."
>
> (Call Log "3C1G10H9," Def. Zigler's Ex. H.)
>
> I just want someone that I can be real with and give myself to. . . I already told you how I feel about you. . .  I can't make myself any clearer. . . I'm trying to remain as true to you as I possibly can. . . We can go as far as you want to baby, you know what I'm saying, and I'm always going to be there for you regardless.
>
> (Call Log "3C1G10HB," Def. Zigler's Ex. H.)
>
> I'm here for you 100%.  I am more than willing to commit myself if that's what you want. . . I'm so here for you. . .  I got a lot of love to give you. . . I'm holding nothing back. . .  I got nothing to hide. . . anything you want from me, you got that. . . I ain't going nowhere. . . ain't nobody else got me like you got me, ain't nothing like that going on. . . It would be a pleasure and an honor for me to know you and to get to know you further, to be with you, and be there for you, you know what I'm sayin?  . . . Do you know how hard it is for me to hang up. . . I hear you and I can feel you next to me. This is a crazy situation we are in, but believe me they can't stop me.
>
> When we are finally able to spend that, that time with each other, I just want you to know that I'm not responsible for you calling in sick, you know what I'm saying for the next two weeks, to whatever . . you gonna call in crippled, you gonna say, I can't walk straight, and I'm so serious too. . . You ain't heard me when I say I'm down for whatever, we can get some handcuffs, we can get some whatever, you know what I'm sayin? . . . Hell yeah I like that. . . I'm trying to show you shit you ain't ever seen before. . . You're that person for me You know what I'm saying?  You're it, that's it and that's all that's concerning me right now.
>
> I've never had nobody that's goes in that positon, you know what I'm sayin?  I've had other little things going on but ain't nobody that I've been able to give myself to a 100% like you, you know what I'm sayin?
>
> (Call Log "3C1G10HC," Def. Zigler's Ex. H.)

1     I did miss you last night. . . Thinking about you as always, had a dream about you, crazy dream.

2

3     I miss hearing your voice too.  Today, I've been thinking about you nonstop. . . All last night and this morning, you know, you have really put a lot on the line for me, you know what I'm sayin? And I

4     was thinking about that, and I just, you know, wanted you to know that I appreciate everything  You know what I'm sayin?  And all

5     that and sometimes I may overlook it and being too anxious and too you know and some other stuff but I haven't forgotten about that. . .

6     I appreciate everything, and so I just didn't want you to think that I take your for granted or miss what you've done for me, what

7     you've sacrificed for me . . . Like I said I'm with you and whatever, I'm down for whatever, you know, I just need, you know, from

8     you, you know um, I need to know that you're, um you know like I said, I'm down for whatever, but whatever I'm down for I just need

9     to know that you're down for also.

10     (Call Log "3D1G10IF," Def. Zigler's Ex. H.)

11     I miss you baby, I'll be thinking about you. . .I wish I could talk to you.

12

13     (Call Log "3D1G10IH," Def. Zigler's Ex. H.)

14     This is crazy- but crazy in a good way, it ain't nothing bad.  I tripped on how you said everything happens for a reason and I got to thinking like all the, all the things that had to happen for us to

15     hook up, you know like, just the events, like if certain things didn't happen like two years ago, I would never have hooked up with you.

16     . . People are meant to be together, even if you only meet them one time.

17

18     (Call Log "3D1G10IT," Def. Zigler's Ex. H.)

19     I've been thinking about you all day. . .  You're killing me, but in a nice way though.  I was thinking about you last night, but I'm not sure if you want me to describe to you what I was thinking last

20     night. . . Just had thoughts, you know what I'm sayin, of us.  And you know that Hershey syrup that comes like in a squeeze bottle?

21     And you know what I'm talking bout then, okay. . .  we got that you know, we got the lights turned low, you know what I'm sayin.  We

22     got some Jodeci playin, matter of fact, your favorite.

23     (Call Log "3D1G10IU," Def. Zigler's Ex. H.)

24     Stop it.  I fell in love with you, okay.  You're who I love so, can't nobody , ain't nobody in that slot right now. . . Ain't nobody in that

25     slot period.  You're all I think about.  I don't think about nobody else up in here. . .  I love you baby and I'm coming home to you.

26     We're going to kick it.

27     (Call Log "4G1G10KP," Def. Zigler's Ex. H.)

28     I love you too, baby.  I love you a lot. I appreciate that I really do.

> You just don't know.  Just you being there, just you offering a supportive word means a lot.  It's something I haven't had. . . I know that you are there for me and would actually go out of your way.
>
> (Call Log "421G102Q," Def. Zigler's Ex. H.)
>
> I was thinking about you today.  It's been a slow day. . . I miss you though.  I love you. I love you baby.  I'll call you tomorrow
>
> (Call Log "491G10CW," Def. Zigler's Ex. H.)

It is clear from the conversations between Plaintiff and Defendant Zigler, that not only was the relationship consensual, Plaintiff was aggressively going after her.  As referenced above, on numerous occasions Plaintiff initiated phone calls with Defendant Zigler.  During these conversations, he made sexual advances towards her (Call Logs "3B1G10GW"; "3C1G10HC"; "3D1G10IU," Def. Zigler's Ex. H), and discussed their future together including the possibility of having children (Call Log "3Q1G10WB," Def. Zigler's Ex. H).  Plaintiff has not provided this Court with any evidence that would support his claim that he was forced to participate in this relationship.  As such, the Court hereby grants Defendant Zigler's motion for summary judgment as to Plaintiff's Count One for § 1983 violations under the Eighth Amendment.

Furthermore, because Plaintiff has failed to provide evidence of an Eighth Amendment violation, Plaintiff's claims against Defendants Greg Anderson, Rhonda Carter, Tim Virga, and Lori Rodriguez cannot stand.  Plaintiff's Count Two claim is predicated on Defendants Greg Anderson, Rhonda Carter, Tim Virga, and Lori Rodriguez's alleged failure to protect Plaintiff from alleged Eighth Amendment violations (sexual abuse).  Because Plaintiff has failed to provide evidence of such a violation, Plaintiff cannot maintain a cause of action for liability upon these Defendants.  Accordingly, Defendants Greg Anderson, Rhonda Carter, Tim Virga, and Lori Rodriguez's motions for summary judgment as to Plaintiff's Second Cause of Action are hereby granted.

//

//

//

### IV. CONCLUSION

For the foregoing reasons, this Court finds that Plaintiff has failed to provide evidence in order to maintain the claims found within his Complaint. As such, Defendants Lori Rodriguez, Stacy Zigler, Greg Anderson, and Tim Virga/Rhonda Carter's motions for summary judgment (ECF Nos. 66, 67, 68, and 69) are hereby GRANTED. Because there are no existing claims before this Court, the Clerk of Court is directed to CLOSE THIS CASE.

IT IS SO ORDERED.

Dated: February 29, 2016

Troy L. Nunley
United States District Judge